THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESUS ESCALANTE, Defendant-Appellant.

Second District    No. 2—91—1400

Opinion filed January 27, 1994.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles, and Herbert L. Holzman, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a bench trial, defendant, Jesus Escalante, was convicted of burglary to a motor vehicle (Ill. Rev. Stat. 1989, ch. 38, par. 19—1(a) (now 720 ILCS 5/19—1(a) (West 1992))) and was sentenced to 24 months' probation. Defendant raises the following issues on appeal: whether the information failed to state an offense; whether he was proved guilty of the offense beyond a reasonable doubt; and whether the trial court abused its discretion in denying a continuance in the absence of an interpreter.

The information charged that defendant committed burglary by entering the "motor vehicle of Stewart Davies, being a 1985 Pontiac Firebird, which was parked in the area of 215 N. Spring St., Elgin, *** with the intent to commit a theft therein." After the State was unable to locate Stewart Davies, it moved to amend the information by deleting "of Stewart Davies" from the charge. Defendant objected to the amendment. The State indicated that it intended to call Stewart Davies' wife, Ann Davies, a co-owner of the vehicle. The court noted that the State might have difficulty proving the element of entry without authority, but it allowed the State to amend the information.

The court appointed an interpreter for defendant, who spoke only Spanish. From the record, it appears that defense counsel did not speak Spanish, and he communicated with defendant through an interpreter. The bench trial was held on October 11, 1991. Defendant was not present when the State called the first witness, but he arrived shortly thereafter, and the State repeated the questions that defendant missed. However, the interpreter did not arrive until late in the direct examination of the State's second witness. The court previously denied defense counsel's request to wait for the interpreter.

The State's first witness, Officer David Buck, of the Elgin police department, testified that on March 10, 1990, around noon, he was called to the Ace Hardware store at 215 Spring Street. He parked his squad car next to a red Pontiac Firebird. "Mr. Davies" and Dale Moorhouse approached Buck. Based on their discussion, Buck investigated the scene and the red Firebird. He did not see any damage to the vehicle.

Dale Moorhouse testified that around noon on March 10, 1990, he was sitting in his car in the Ace Hardware parking lot. Moorhouse saw a man walk into the parking lot and stop at a car parked in the third space from the store's entrance. The man opened the driver's door, got into the car, and sat behind the wheel briefly. The man reached for something, and then he got out of the car. Moorhouse saw him put an item into his pocket. The man closed the car door and walked out of the parking lot. Moorhouse identified defendant as the man who entered the vehicle in the Ace Hardware parking lot. Moorhouse further testified that he went into the store and informed the manager that a car had been burglarized, and Moorhouse was allowed to use the phone to call the police.

Ann Davies testified that she was married to Stewart Davies, but she did not know his whereabouts. She and Stewart Davies owned a 1984 or 1985 Pontiac Firebird. There was a radar detector in the Firebird on March 10, 1990, when Stewart Davies left with the car. When he returned home a few hours later, the radar detector was gone. The radar detector had been on the dashboard of the Firebird. Ann Davies did not know defendant, and she had not given him permission to enter the Firebird or take the radar detector. She also stated that Stewart Davies would not have allowed anyone to enter the car. Ann Davies admitted that she had no knowledge about what happened to the radar detector. She filed a petition for dissolution of her marriage to Stewart Davies. Ann Davies also stated on cross-examination that, on March 10, Stewart Davies went to the Ace Hardware store. The court then asked the witness about the size of the radar detector. She stated that it was small and would fit into a pocket.

Defendant testified that on March 10, 1990, he was working from 7 a.m. to 5 p.m. at a factory on Route 31 in Elgin. He denied that he was at the Ace Hardware on that date or that he did anything to a Firebird. On cross-examination, defendant admitted that he had a lunch break at noon on March 10, but he stated that he never went out for lunch.

In finding defendant guilty, the court determined that defendant's testimony was not credible, and it found that Ann Davies' description

of the radar detector was consistent with Moorhouse's testimony that defendant took a small item from the car and put it in his pocket. The court found that defendant entered the vehicle without authority. In his motion for a new trial, defendant raised issues relating to the sufficiency of the evidence. The court denied the motion, and defendant timely appealed.

Defendant first contends that the amended information failed to state an offense because it failed to allege that any person had a possessory interest in the vehicle. Initially, we must determine the proper standard to analyze this claim. Defendant argues that the information must set forth the nature of the offense charged as required by section 111—3(a) of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1989, ch. 38, par. 111—3(a) (now 725 ILCS 5/111—3(a) (West 1992)); *People v. Thingvold* (1991), 145 Ill. 2d 441, 448.) The State asserts that because defendant did not file a written motion to dismiss the information, the less strict standard of *People v. Pujoue* (1975), 61 Ill. 2d 335, applies. Under *Pujoue*, when a charging instrument is challenged for the first time on appeal, the standard is whether the charging document apprised the defendant of the precise offense charged with sufficient specificity so that he could prepare his defense and plead the resulting conviction as a bar to future prosecutions based on the same conduct. *Pujoue*, 61 Ill. 2d at 339.

■ We agree with defendant that the stricter standard applies here because defendant challenged the information before trial. (*People v. Wilder* (1991), 219 Ill. App. 3d 437, 439; see also *People v. Krause* (1993), 241 Ill. App. 3d 394, 396.) Defendant objected to the State's proposed amendment deleting the name of the person with a possessory interest in the vehicle. The court considered that the State might not be able to prove the "without authority" element of the charge, but it denied defendant's motion. We therefore conclude that defendant sufficiently raised the issue before trial.

For the trial court to have jurisdiction, the information or indictment must charge the accused with a crime. (*People v. Ikpoh* (1993), 242 Ill. App. 3d 365, 380.) Under section 111—3(a), the information or indictment must set forth the statutory provision, the nature and elements of the offense, the date and county of the offense, and the name of the defendant. (Ill. Rev. Stat. 1989, ch. 38, par. 111—3(a) (now 725 ILCS 5/111—3(a) (West 1992)).) The elements of burglary are knowingly and without authority entering a motor vehicle with the intent to commit a theft. (See Ill. Rev. Stat. 1989, ch. 38, par. 19—1(a) (now 720 ILCS 5/19—1(a) (West 1992)).) The information here alleges these statutory elements of burglary.

Defendant argues that, under *People v. Rothermel* (1982), 88 Ill.

2d 541, the information must also allege the owner or the person with a possessory interest greater than that of the accused. Defendant's reliance on *Rothermel* is misplaced. *Rothermel* considered whether a variance between the allegation of the owner of a building and the proof at trial prejudiced the defendant. (*Rothermel*, 88 Ill. 2d at 548.) As the court noted, "[t]he gravamen of the crime charged against the defendant was not that the house broken and entered into belonged to [the particular victims], but rather that the defendant broke and entered into a building not his own with the intent to commit a felony or theft." (88 Ill. 2d at 545.) *Rothermel* does not support defendant's assertion that an information fails to state the offense of burglary if it fails to list the owner or possessor of the property.

*People v. Bailey* (1980), 80 Ill. App. 3d 242, cited by neither party, is on point. In *Bailey*, the indictment charged that the defendant "knowingly and without authority entered a motor vehicle of Donna Tabor." (80 Ill. App. 3d at 243.) The court allowed the State to strike the words "of Donna Tabor" from the indictment over the defendant's objection. (80 Ill. App. 3d at 243.) On appeal, the court considered the sufficiency of the indictment, which alleged that the defendant " 'knowingly, without authority entered a motor vehicle, said motor vehicle being a 1976 Ford Granada.' " (80 Ill. App. 3d at 244.) The court held that the indictment did not fail to state an offense, as it alleged the elements of burglary, and ownership or a possessory interest in the motor vehicle is not an element of the offense. *Bailey*, 80 Ill. App. 3d at 244.

*Bailey*'s interpretation is supported by a comparison of the elements of burglary with the elements of home invasion and theft. Home invasion occurs when a person "without authority *** knowingly enters the dwelling place *of another.*" (Emphasis added.) (720 ILCS 5/12—11(a) (West 1992).) One may commit a theft by knowingly obtaining or exerting unauthorized control over "property of the owner." (720 ILCS 5/16—1(a) (West 1992).) The burglary statute does not include the language "of another" or "of the owner." Had the legislature intended that the allegations of a possessory or ownership interest be a necessary element of burglary, it could have included such language. (See *People v. Frieberg* (1992), 147 Ill. 2d 326, 348-49.) We conclude that the lack of an allegation of ownership or possessory interest is not fatal to a charging instrument and that the information here was sufficient because it alleged the statutory elements of burglary.

Defendant next contends that he was not proved guilty of burglary beyond a reasonable doubt. When considering a challenge to

the sufficiency of the evidence, the reviewing court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Campbell* (1992), 146 Ill. 2d 363, 374.) We will not set aside a conviction unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt. *People v. Wittenmyer* (1992), 151 Ill. 2d 175, 192.

Essentially, defendant argues that the State failed to prove that the vehicle he burglarized was the Pontiac Firebird driven by Stewart Davies on March 10, 1990. Although defendant asserts that we should not consider the testimony of Officer Buck, that he investigated a red Pontiac Firebird in the Ace Hardware lot, because it is hearsay, we agree with the State that this argument is meritless. This testimony is not an out-of-court statement offered for the truth of the matter asserted (*People v. Lawler* (1991), 142 Ill. 2d 548, 557), but is, instead, a description of what Officer Buck did.

■ Defendant further argues that the evidence established only that a Firebird was in the Ace Hardware parking lot around noon and that there was no evidence that the Firebird was burglarized. In addition, defendant asserts that the State failed to prove that defendant lacked the authority to enter the vehicle.

"[A] defendant may be convicted of burglary when the evidence shows that he knowingly and without authority enters a motor vehicle with the intent to steal ***, and this may be proven by circumstantial evidence and the inferences that may be drawn from that evidence." (*People v. Tucker* (1989), 186 Ill. App. 3d 683, 692.) Ann Davies testified that on March 10, 1990, Stewart Davies left with a 1984 or 1985 Pontiac Firebird to go to the Ace Hardware store. When he left, the radar detector was in the car. The radar detector was small enough to fit in a pocket. When he returned to the car several hours later, the radar detector was gone. Ann Davies also testified that she did not know defendant and that he did not have the authority to enter the Firebird, nor would Stewart Davies have allowed anyone to enter the car. Moorhouse saw defendant walk up to a car parked in the Ace Hardware parking lot, remove something, and put it into his pocket. Officer Buck testified that he talked to Davies and Moorhouse, and then he investigated a Pontiac Firebird. There was no evidence that Stewart Davies authorized defendant to enter the vehicle, and Moorhouse's testimony that defendant walked into and out of the parking lot without entering the store supports the inference that Davies did not authorize defendant's entry into the car. In addition, defendant did not testify that he was authorized to enter the car.

From this evidence and reasonable inferences drawn therefrom, the court could find that Stewart Davies drove the Firebird to the Ace Hardware store, parked the car, and went inside. Defendant walked into the parking lot and went to Davies' Firebird. He opened the unlocked door, got in the car, and took the radar detector, and he did not have the authority to enter the vehicle. We conclude that defendant was proved guilty of burglary beyond a reasonable doubt.

Finally, defendant contends that the court abused its discretion in proceeding with the trial in the absence of the interpreter. Defendant acknowledges that the decision to appoint an interpreter is within the trial court's discretion and a conviction will be reversed only when an abuse of the court's discretion deprived the defendant of some basic right. (*People v. Soldat* (1965), 32 Ill. 2d 478, 481.) Defendant argues that his right to be present at part of the trial was violated.

Because defendant failed to raise this issue in his post-trial motion, we may consider it only as a matter of plain error. (*People v. Bean* (1990), 137 Ill. 2d 65, 80.) A defendant has a fundamental right to be present during the testimony of witnesses against him (*People v. Mallett* (1964), 30 Ill. 2d 136, 141-42), which implicates a defendant's sixth amendment confrontation rights. Consequently, it does not matter in such a case if the defendant's absence did not deny him a fair trial. See *Bean*, 137 Ill. 2d at 82-83; see also *United States v. Gagnon* (1985), 470 U.S. 522, 526, 84 L. Ed. 2d 486, 490, 105 S. Ct. 1482, 1484 (when the right to presence at trial concerns proceedings other than a defendant actually confronting witnesses or evidence against him, the right originates in the due process clause, and its scope depends on whether a fair hearing is thwarted by the defendant's absence).

■ We reject the State's assertion that, because defendant could not have assisted in the cross-examination of Buck or Moorhouse even had an interpreter been present, the absence of an interpreter did not deny defendant a fair trial. As noted above, the sixth amendment right of confrontation requires a defendant's presence during the testimony of the prosecution's witnesses. Thus, our resolution turns on whether the absence of an interpreter during that testimony rendered defendant not "present."

Although defendant cites to *Monte v. State* (Fla. Dist. Ct. App. 1983), 443 So. 2d 339, in support of his argument that the absence of an interpreter effectively renders a defendant not present during the trial, we find the reasoning of other authority more persuasive. "Not only for the sake of effective cross-examination, however, but as a matter of simple humaneness, [a defendant] deserve[s] more than to

sit in total incomprehension as the trial proceed[s]." (*United States ex rel. Negron v. New York* (2d Cir. 1970), 434 F.2d 386, 390.) The court in *Negron* noted:

> "Considerations of fairness, the integrity of the fact-finding process, and the potency of our adversary system of justice forbid that the state should prosecute a defendant who is not present at his own trial [citation], unless by his conduct he waives that right. [Citation.] And it is equally imperative that every criminal defendant—if the right to be present is to have meaning—possess 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.' [Citation.] Otherwise, '[t]he adjudication loses its character as a reasoned interaction *** and becomes an invective against an insensible object.' " (*Negron*, 434 F.2d at 389, quoting Note, *Incompetency to Stand Trial*, 81 Harv. L. Rev. 454, 458 (1969).)

The presence of an interpreter for a defendant who does not speak or understand English ensures that the defendant will not "face the Kafkaesque spectre of an incomprehensible ritual which may terminate in punishment." (*United States v. Carrion* (1st Cir. 1973), 488 F.2d 12, 14.) In addition to Federal cases, several other jurisdictions have ruled that the absence of an interpreter will render a defendant not present for the trial. (See *People v. Avila* (Colo. App. 1990), 797 P.2d 804, 805-06; *Chavez v. State* (Ind. 1989), 534 N.E.2d 731, 737; *State v. Kounelis* (1992), 258 N.J. Super. 420, 427, 609 A.2d 1310, 1313-14; *State v. Neave* (1984), 117 Wis. 2d 359, 364, 344 N.W.2d 181, 183-84.) We agree with defendant that the absence of the interpreter rendered him not present during the testimony of Buck and during a portion of Moorhouse's testimony.

The court appointed an interpreter for defendant at the preliminary hearing. An interpreter participated at all of the pretrial proceedings. At trial, defense counsel and the court engaged in the following colloquy:

> "MR. STEINBERG [Defense counsel]: *** Nicole Okerblad [the interpreter] is leaving Kaneville. I talked to her babysitter [*sic*] at 10 after 1:00. It's my understanding that the distance is not that great. The babysitter [*sic*] said we should be seeing her at any minute.
>
> THE COURT: Let's go ahead and see—
>
> MR. STEINBERG: Well, I'd prefer to have an interpreter here.
>
> THE COURT: Well, I know you would, but I'm not waiting for anybody.
>
>        \* \* \*
>
> MR. STEINBERG: Judge, for the record the defendant is now

present. Nicole Okerblad is not here and I would object for the record that this proceeding is happening without the interpreter.

THE COURT: Well, the matter's been set for trial. It's not my job to make sure an interpreter is present. If she shows up, fine. If she doesn't, I'm not going to worry about it. Objection is on the record. Let's go ahead."

Under these circumstances, we conclude that the court's refusal to wait for the interpreter constituted an abuse of discretion which violated defendant's sixth amendment right to be present at trial and confront the witnesses against him. We therefore reverse defendant's conviction and remand the cause for a new trial.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

INGLIS, P.J., and GEIGER, J., concur.